Bellacosa, J.
(dissenting). I conclude that an affirmance of the Appellate Division’s judgment denying prohibition is in order and, thus, respectfully dissent.
At the threshold, the exceptional writ of prohibition should not be granted, even assuming the writ does lie, which I contend it does not. The People’s "clear” entitlement to its issuance is at least arguable, because the case turns on a subtle statutory interpretation of continuing trial court authority. That analysis alone ought to be enough to sustain the prudential result of the intermediate appellate court, which ordinarily allows trial and sentencing courts a reasonable discretionary range to deal with this particular category of condition of probation as part of a sentence. To restrict that flexible authority, by approbation of the intercepting weapon of prohibition, dependent as it is on the highest notions of jurisdiction to act, is not warranted or necessary in this case. Entitlement to the extraordinary writ requires a petitioner to satisfy a dual high hurdle of showing lack of jurisdiction over an entire proceeding and a clear right to the writ itself. I respectfully submit that the prosecution has fulfilled neither prong of its burden in this case.
*361 The collateral and irregular procedural modality, granted in the first instance by this Court, interrupts and supersedes ordinary, direct-line process. Applied here, it seriously weakens the definitive rationale and guidance of Matter of State of New York v King (36 NY2d 59) by its emphasis on the necessity in law for an error-correcting "remedy” for the prosecutor’s "grievance” (majority opn, at 359). In King, then-Chief Judge Breitel, writing for a unanimous Court, concluded that prohibition did not lie to preempt an egregious, prejudicial and unreviewable error of law involving a trial court grant of excessive peremptory challenges in a criminal action (id., at 61-62). This Court further observed in King that the excesses of jurisdiction and power in criminal actions which justify "the abrupt intervention of prohibition * * * always invoke, as for example in the instance of double jeopardy, an unlawful use or abuse of the entire action or proceeding” (id., at 64 [emphasis added]; see also, Matter of Holtzman v Goldman, 71 NY2d 564, 570 [allowing prohibition because the trial court’s error "affected the entire proceeding in the most conclusive manner; it terminated the case”]). No such extension or pervasive abuse of power affecting the entirety of a criminal proceeding occurred here. Rather, the trial court attempted to continue to exercise discretion within its statutorily delegated powers concerning part of a split sentence.
This Court also cautioned in King (supra) that an "unsound and novel extension of the extraordinary ancient remed[y] of prohibition * * * might be a credit to man’s ingenuity but a disabling discredit to the jurisprudence” (id., at 65 [emphasis added]). The utilization in this case now specifically extends the availability of prohibition for the first time to parts of the sentencing phase of a criminal proceeding and generally into the field of authorized trial court supervision of conditions of probation. This additionally and precedentially strengthens the procedural hand of one party (the prosecutor), not only over defendants but especially over neutral Magistrates, who should equally oversee both contending parties before courts.
To be sure, this Court has restricted the authority of trial courts in sentencing contexts (see, People ex rel. Sedotto v Jackson, 307 NY 291; People v Vasquez, 88 NY2d 561, 580-581; People v Rodney E., 77 NY2d 672), but it has not done so by prohibition that encroaches upon a trial court’s monitoring and modification of a sentence intertwined with an arguable condition of probation. In Matter of Kisloff v Covington (73 NY2d 445), for instance, this Court concluded that courts lack *362 inherent power to vacate an illegally imposed plea and sentence once the criminal proceeding has terminated by the entry of judgment (id.., at 452). The Court there granted prohibition based on the "circumstances” of that case (id., at 449). That general proposition is significantly distinguishable from the controlling nature and particular factors of the instant case. Here, the dispute is not generally or essentially about power or the lack of power and its source. Rather, it is more specifically about whether a trial court has continuing supervision of a sentence, where the nuanced pivot of determination is whether the modified part of the sentence is a true condition of probation. The extension of the extraordinary writ of prohibition to this slice of the sentencing function and the particular sentence in this case represents an incrementalism irreconcilably away from this Court’s governing precedents and principles concerning prohibition. That transforms the writ into a quite ordinary procedural tool and tactical weapon.
I agree without question that prohibition should be available to curtail judicial arrogation of power when the Legislature has "clearly” delimited the jurisdictional reach of courts as to the proceeding itself and when the remedy is "clearly” warranted. Just as surely, in my view, however, the writ should not be allowed to collaterally intercept and interrupt parts of proceedings, which are regular and literally authorized on their face. This is especially so when courts are simply going about the day-to-day interpretation and application of statutorily prescribed authority that the prosecutor checkmates by claiming the trial court is acting ultra vires. Indeed, the majority’s nuanced reliance on context and history would seem to belie the clear entitlement prerequisite. The straightforward analysis respectfully proffered by this dissenting viewpoint does not beg the somewhat tautological jurisdiction question always inherently complicating a prohibition question. Lastly, our New York State Supreme Court’s handling of Antinore v Genesee County Local Conditional Release Commn. (146 Misc 2d 520), relied upon significantly by the majority, is plainly distinguishable and in no event binding on this Court.
The invocation of prohibition in this case, in the final analysis, entangles the writ and the matter in a purely statutory interpretation exercise. The root tension between the contenders for power — the prosecutor and the court — boils down to a defensible statutory interpretation of concededly delegated trial court authority and supervision over a defendant with an arguable condition of probation imposed on him. On the merits, *363 the final judgment here ultimately limits sentencing Judges and places defendants within the combined power of the prosecution and corrections authorities, out of the reach of neutral Magistrates trying diligently to implement and manage split sentence modalities and appropriate alternatives to incarceration measures. If policy matters were relevant to the precise disposition of the issue in this kind of case, I would cogently press that point. Ironically, the majority, instead, enters the policy calculations by weighing society’s and victims’ interests, which neither I nor anyone else would gainsay. It even grants hierarchal primacy to the prosecutor over the trial courts’ general supervision of plea negotiation outcomes as they flow from the pros, cons and factors of a particular plea negotiation context. The flaw of this part of the majority’s analysis is that policy factors should have no place in anyone’s side of this purely prohibition-writ case.
Chief Judge Kaye and Judges Simons, Smith, Levine and Ciparick concur with Judge Titone; Judge Bbllacosa dissents and votes to affirm in a separate opinion.
Judgment reversed, etc.